Charles Corey for mr. Velasco may it please the court I think you can summarize the reasonableness unreasonableness of this case in one sentence one sentence and that's when the judge the trial judge at the end of the interview of juror 112 said to her I wish I had known about this yesterday how and and then proceeded to do nothing he had three alternates who had just been sworn in in that jury the day before the trial had not started no witnesses had testified to the trial lawyer I wasn't no your honor I wasn't the trial or I'm appointed by by the court he proceed in the district court and you your court issued a certificate of appeal ability and I was appointed I wasn't a trial lawyer and I haven't talked to the trial lawyer but I'm focusing on that and it is I I mean a trial lawyer and I've tried cases that's the first thing you think about and I've tried this fact situation out I've tried to save two minutes I've tried this fact situation around other attorneys they all say well what happened to the alternates were they hit by a truck were there no alternates what's going on I mean it's so obvious well I think on the novel review you'd have a better argument on this record but we're here on habeas review so there has to be an unreasonable application of clearly established federal law as articulated by the Supreme Court what's your best theory as to the unreasonable application of clearly established Edwards what's my best Supreme Court of the United States case it's an old case it's a good case to me versus Ohio we're talking about structural error here in other words when you that was a biased judge he was the mayor of a small city and he he only got paid when he found people guilty little bit of a problem a biased judge jurors are judges okay that's to me versus Ohio that is my case that is clearly established federal law that you that you it is structural error to have a biased judge slant juror actual determination that she could be and it was it was an unreasonable unreasonable factual determination because of the process Oh the whole colloquy I read it and I put it in my brief okay remember the prosecutor comes out and first thing he says well right now if you had to go to the jury room how would you find stages you know everything was guilt well wait a minute though you need to when I first read the case it was very troubling like you did and I couldn't quite figure out what was going on here and then it caught my eye that this all occurred after opening statements correct both sides they had opening state had opening statements in defense counsel when he gives his opening statement he says tells the jury you know it was wrong what he did it was illegal what he did he just didn't engage in force it was voluntary sex with these young girls he he committed a crime but not the crimes that are charged something less and then they spoke and that's what he that was his you know he says you're gonna hear I'm gonna bring an expert on and all this stuff I mean he laid out what his case was going to be right and that's at the end of the day after they select the jury right that's right and the next day the next morning the juror 112 comes in and says hey I gotta share some information with the court excuse me we had something I have a problem no problem with this teacher I know teachers I have children right her child was in the same class as her colleague who taught and molested other kids she is never ever ever going to forget that your honor I'm sorry never never never I'm a parent any parent the minute they found out that their child and she was more than a parent she was a teacher that's huge she makes reference to the opening statement she didn't say what in for dire on my other case justice when judge wins me asked me what's my best case was another great case about more dire that's the McDonough case I cited and I cited them all I cited the Supreme Court case that's a civil case I make any difference the Supreme Court said we have to have good for dire or jurors get seated who don't get shouldn't be seated and then there's a criminal case on page 14 of my brief the Rosales case where it says how important more dire is to get an was there a biased juror seated in this case and you know sitting here at the Court of Appeals it's very difficult to review a cold records really the trial judge that's looking at the juror you know she waffled back and forth there's no question about it and some of her answers in isolation would seem very very troubling that would indicate perhaps some sort of bias and it was up to the trial judge to explore that and to figure it out so when the trial judge says I'm not going to excuse her I think it's not an easy situation but I really don't think it's that close of a call either this juror struck me as very sincere and it seems to me on the whole indicate that she could follow the court's instructions what are we going to do with that because I didn't have a chance to assess that juror by looking at her in the eyes what you're going to do with it is ask the same question that all my practitioners have asked me the process was faulty and unreasonable we have process we have alternate jurors just for this why how could it possibly be reasonable for that judge not when it's when it's when these facts are so there's that they're so pointing towards bias giving the doubt to the defendant and saying thank you I know you're sincere and he did say I sure wish I could have found out yesterday what did mean it means that she wouldn't have been on the jury if he said I don't want her on my jury I want you to issue I issue a challenge for cause and the judge said denied you don't have to get so excited you look a little like Mark Twain you know thank you that's a compliment thank you for that thank you that she didn't reveal in in in the Vordaer well of course I mean and for the Vordaer an attorney to have something like that your heart's got to sink I know Vordaer I've done it and I he must have felt two feet tall how did this person escape well she escaped by being quiet I'm sorry and she knew once again reasonability is not I think what the court is focusing on I'm afraid they point out that that we've got these alternates three alternates I know but did he remind the judge of that did he remind the judge of that the defense attorney yeah he didn't have to they just oh don't say he didn't have to oh I wouldn't I would have had I would I don't care what yelling like I'm yelling now okay you're right I'm sorry he didn't have a tantrum I would have had a tantrum I've been to jail before okay once you once the judges sent you to jail you can have tantrums you've been to jail yes I have what you 1974 San Diego judge Jack Leavitt sent me to jail arguing to a jury in a cop-killing case 1974 the Court of Appeal got me out pretty fast a couple of hours I but I was strip-searched and he wanted to break my spirit it didn't work he's not there I'm still here I can see that thank you thank you yeah he's gone I'm still here he's got so he has a lawyer there I wish he would have said the lawyer but the lawyer didn't point out that there were alternates I know I need in but that's not a forfeiture that's not a forfeiture I think he was in shock I really do I think he was in shock that that jury that juror stayed on the jury he was in shock because they said oh my god a lawyer's worst nightmare I've got a biased juror and I can't do anything about it well and that's unreasonable don't you know this this okay oh you want me to keep turning my hearing aids off I'm also not leaving any time you know yeah you make a good argument so just quit yelling before maybe I should just sit down before we I think I'll sit down before we get you another strip okay I did bring my toothbrush I really do have it yes thank you what what toothpaste you make a mess wait wait wait the marshal give it to okay don't worry we'll take care of that well they're from the state may it please the court California Deputy Attorney General Kimberly Donahue on behalf of respondent of Kelly the district courts denial of the habeas petition in this case was proper in this court should affirm there was no unreasonable application of clearly established federal law by the state courts and the trial court did not make any unreasonable determination of fact in this case about whether or not juror number 112 was biased petitioner has failed to meet his burden of establishing that bias of juror number 112 either I'll tell you what I feel about this case all the judge had to do was to excuse this woman put on an alternate juror and that would have ended it we wouldn't be here today and why in the world he attorney didn't suggest it that's another mystery to me but it's such a simple thing to do and this juror had had a daughter she was concerned about and what happened in the school and all the rest of it hard for me to believe that somehow that flipped her mind and so I just think this this judge blew it down there in a simple thing bring this alternate on everybody proceeds I'll go that's the end of you're right although I don't think that what the juror articulated in this particular case amounted to what would be grounds for a challenge for cause it may have been grounds for the defense attorney had been disclosed during the primary was grounds for challenge for cause well I think what the trial court essentially was was discussing when he discussed that you know he wished he had learned of this information during voir dire is that it may have been a challenge that or could have been grounds for a peremptory challenge that the that the district excuse me that the defense attorney could have used and I think we know that because there was a second juror that was actually interviewed or they actually spoke with after speaking with your 112 and in that exchange at the end of that exchange the court said again I wish that I had known this because I think it could be grounds for a peremptory challenge but the court it seems was clearly stating that it did not believe that what she had disclosed was grounds for cause and when you look at what she was talking about your honor mentioned that her daughter had been taught that you could tell me all the words you want you're not going to change my mind on this I mean to me it's just so simple and so clear and I think that that there are certain things though that that this juror did say that indicated that she could be fair and impartial in this case and that's the standard that the court needed to instructions no we say yes can you put that aside yes but here if you look at this situation it's me it's obvious that you don't want a person like that on a jury well I think we use our impartiality it's very easy to challenge so why not just put another all and again it's because the court in this case determined that it was not the basis for a challenge for cause and and I understand your honors disagreement with that ultimate you can talk to somebody else I think you know when you take everything in its entirety and I understand your concern and I think there were as the court has pointed out some troubling statements me talk a little slower my apologies no no no that's it's not it's not you it's me your generation likes to talk really really fast and good thing that I would Abraham Lincoln have and looked upon Gettysburg he said you know course was ever just go to the public thank you yes your honor well ultimately in this case though that the juror did come once it was explained to her that she could only rely on the evidence as it was to follow the law as instructed by the court she indicated that she would be able to do that and the court crediting her as being a believable as being believable in what she was talking about believable in the sense that she did not believe or she did not recall this during the incident during voir dire and and as the district court court pointed out during voir dire the questions were specifically with respect to family members or close friends or the jurors themselves being involved in crimes that were similar to those that were charged here and and none of none of those categories meet what this juror was describing in this event it was an event that happened by a former colleague of hers after her daughter was no longer a student of that of that colleague and when she describes whether or not it was a significant event in her life but the defense counsel actually asked her that she says no not not in my life and she specifically started referencing her former colleague saying they felt betrayed and they thought it may have been significant but she no longer worked with this individual her daughter was no longer a student of this individual and in that sense the trial court credited her as not having remembered it the day before and and as the district court also pointed out the juror coming forward with this the very next morning after voir dire after opening statements before any evidence is inconsistent with any sort of intent to conceal here's some of the things she said well it's pretty much the same situation my thought this morning was why didn't he turn himself in just like the teacher that that's a teacher that it just popped into my head he could have turned himself in avoided a trial so I don't know that I can separate that now I've remembered the situation and then she also stated knowing your opening statements I would have vote I would have to vote guilty and then another I don't think I would be able to vote not guilty yes she did make those statements your honor the court did however then clarify to her that whether or not somebody turns himself in that's in your mind you know the court specifically asked her though it just puts the words in front of someone yes and I think that that again courts have held that this level of perfection is not something that our judicial system requires for jurors jurors do come into a courtroom with their past experiences and in this case this juror did say that she could follow the court's instructions including the instruction that whether or not he turned himself in is not evidence so ultimately the fact that she when it was explained to her what she could and could not consider in the judges instructions as the law she said that she could absolutely follow those those instructions and that she would rely only on on the evidence and while again those statements in isolation are troublesome I think all the courts have recognized that we recognize that taking the entire colloquy together it suggests that she was not biased it establishes that she is not biased and petitioner did not meet his burden of establishing that she was biased either by concealing or actually so what was the sentence here remember I apologize your honor I looked it up yesterday I apologize your honor I don't know that off the top of my head he was sentenced to 123 years to life in state prison under what 123 years to life 123 years to life yes sir so this all occurred after the opening statement it did your honor yes and so as was pointed out previously the juror was basing a lot of her answers to would you vote guilty or not guilty based on that opening statement the themes that were presented by counsel there and then ultimately when I was explained to her my I mean I found this when I just read the colloquy I found it very troubling as Judge Pregerson has elaborated but then when I read the opening statement it would be surprising if any juror who had been confronted having heard those opening statements and they've been confronted with these kinds of questions how would you vote when defense counselor gets up there and says it's wrong what he did wrong what he did it was illegal what he did he's guilty of something but he's not guilty of essentially of rape is what he was saying correct and I've seen that my times run out but if I may address absolutely and and again when you're when you're asked as a lager how would you vote having just heard opening statements a lager is not expected to understand at that moment given that hypothetical that opening statements are not evidence and that she cannot rely on solely and the judge allowed that question to be asked the judge did allow that question well I think what the judge did afterwards is actually then explained I believe the prosecutor was the one who asked that question yeah judge then that's why we're here today and the judge then clarified that the only thing that the juror could consider when rendering a verdict was the evidence that was was actually presented at trial once the juror understood that and again that's a distinction that we don't hold our jurors to understand absent being instructed that by the court so once that clarification was made by the court the juror more clearly said oh I can follow the instructions given by the I will keep my voice down I want to send you to a marine barber get your haircut that happened to me I know can I get extra time because I have to answer like that did happen to you I was in the Navy I was in the Navy and I was on a submarine in 1962 please don't worry it was the USS Razorback and it was the Cuban Missile Crisis and we the Cuban Missile Crisis 1962 I was in South China Sea but I went I've got to tell you this story because the distillers broke and we only had enough water for the batteries so no one could shave no one got haircuts and then I another submarine said we want mr. Corey he's to be on our submarine the Midway sent a helicopter to pick me up and they took me in this state with a huge afro and my Navy hat sitting on top of it a big beard to the to the Midway dropped me on the flight deck to transfer me by to Iwakuni Marine Air Base you know where Iwakuni is it's in Japan and that's where my submarine was I was there when they took you out of the brig I didn't I had I was the Marines were shocked and they said who is this with this afro and smells so bad because diesel submarine sailors smell awful especially when there's no water and you're submerged for days and days and it was the colonel tracked me down because for some reason there was something in me that you see now that liked looking that way and they tracked me down and actually took me by force to the barbershop. You're a worse storyteller than I am. I had to tell you because you opened the door. I know, I know. Okay. So we got one minute. One minute now the minute starts. Thank you, thank you, thank you. Send me five copies of it. Go ahead. I'm gonna answer just Judge Pei's thing about the opening statement. This is really important. Bingo. This is a bingo point. On page 11 of my brief I state I mean the judge asked well what if defense counsel's right. There was no force. She said I don't care. He's still guilty. See what I mean? That's in the colloquy. What if defense counsel's right and it was proven there was no force. She said even quote even if it was no force I wouldn't be able to vote not guilty. And it's because she had a health teacher tell her that in his position of trust and she in his position of trust is a teacher and he was a teacher. This person is a teacher and a karate teacher. You can't it would do but that was not a defense. He'd still be guilty. She couldn't get rid of that even if the opening statement is she believed it was proven the defense counsel was right. So that answers your point. Okay. Okay. Thank you so much. All right. Matter is submitted. Thank you very much counsel.
judges: Pregerson, Paez, Nguyen